JL

WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Johnny Ray Foster,

Plaintiff,

v.

NaphCare Incorporated,

Defendant.

No.     CV-26-00251-PHX-JAT (DMF)

**ORDER**

Plaintiff Johnny Ray Foster, who is confined in the Arizona State Prison Complex-Lewis, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and a Motion for Emergency Preliminary Injunctive Relief (Doc. 4).  Plaintiff has paid the filing and administrative fees.  The Court will order Defendant to answer the Complaint and respond to the Motion.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does

TERMPSREF

not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.     Discussion of Complaint**

In his Complaint, Plaintiff names NaphCare Incorporated ("NaphCare") as the sole Defendant. Plaintiff asserts a claim regarding his medical care. He seeks monetary and injunctive relief.

Plaintiff alleges the following:

On October 22, 2024, Plaintiff was hit in his right eye during recreation. He felt pain in his eye and placed a warm towel on it, which lessened the pain. Between October 23 and 26, 2024, Plaintiff submitted health needs requests (HNRs) requesting an evaluation of his right eye. Plaintiff did not receive responses to his HNRs.

TERMPSREF

- 2 -

On October 27, 2024, Plaintiff "got with" Arizona Department of Corrections, Rehabilitation and Reentry staff and told them that he needed to be taken to the medical unit for treatment for his right eye because he was losing vision, and the pain had become unbearable. A NaphCare nurse evaluated Plaintiff and obtained permission for Plaintiff to be transported to the hospital for emergency treatment.

At the hospital, Plaintiff received "minimum treatment"—that is, eye drops—and the emergency room doctor told him that he needed to see an ophthalmologist within two days for treatment. Between October 28 and 31, 2024, Plaintiff's vision continued to deteriorate. He submitted HNRs on October 29 and 31, 2024, telling medical staff he had lost vision in his right eye and was suffering extreme pain and pressure in the right side of his head. Plaintiff did not receive any response to his HNRs or evaluation of his eye.

Meanwhile, on October 30, 2024, an eye specialist evaluated Plaintiff's eye injury onsite. The specialist told Plaintiff he was blind in his right eye and had glaucoma in both eyes. Plainitiff asked the specialist what he would do about treating his right eye, and the specialist told Plaintiff there was nothing he could do to help Plaintiff and that Plaintiff needed to see an ophthalmologist.

On November 11, 2024, Plaintiff submitted an HNR stating that he needed treatment for his eye but received no response or treatment. On November 14, 2024, he submitted an HNR asking about the status of his outside appointment with an ophthalmologist. Plaintiff did not receive a response to the HNR.

On November 27, 2024, Plaintiff was told he was going offsite that day to the ophthalmologist. Later that morning, he was told the appointment was cancelled. Plaintiff was not given a reason for the cancellation. Plaintiff did not receive any medical treatment through December 2024.

At some point, Plaintiff submitted another HNR stating he was blind in his right eye due to the lack of medical treatment and that his eye was swollen and the right side of his head was swollen and painful. Plaintiff did not receive a response to the HNR and was not taken to the offsite ophthalmologist.

TERMPSREF

In late January 2025, Plaintiff saw an ophthalmologist, who "focused on his left eye and glaucoma." Plaintiff asked the ophthalmologist "why he [was] not focusing on [Plaintiff's]" injured right eye. The ophthalmologist told Plaintiff that NaphCare told him only to focus on Plaintiff's left eye and glaucoma, although Plaintiff was blind in his right eye.

In February 2025, Plaintiff had another appointment with the same ophthalmologist. The ophthalmologist refused to evaluate Plaintiff's right eye and again "focused on [his] left eye only." Plaintiff "got into an argument" with the ophthalmologist concerning his right eye. The ophthalmologist told Plaintiff that he would recommend to the NaphCare Medical Board that Plaintiff see another ophthalmologist.

On March 18, 2025, Plaintiff saw another ophthalmologist for his right eye. That ophthalmologist told Plaintiff that he had "suffered damage" to his right eye, but NaphCare had only approved an evaluation, not treatment of his eye. The ophthalmologist told Plaintiff that his eye "could be saved and vision restored" if NaphCare approved a "medical procedure."

On March 27, 2025, Plaintiff submitted an HNR requesting that NaphCare approve the procedure the second ophthalmologist recommended. Plaintiff did not receive a response to the HNR. On April 1, 2025, Plaintiff submitted another HNR requesting the status of his ophthalmologist appointment. Plaintiff did not receive a response to the HNR or treatment for the swelling, drainage, or "gap" between his eyeball and eye socket.

On April 8, 2025, Plaintiff saw the ophthalmologist for evaluation and treatment. The ophthalmologist told Plaintiff that NaphCare was delaying approving the procedure to restore his vision and that Plaintiff was "running out of time to get [the] procedure done."

Between April 10 and May 16, 2025, Plaintiff submitted six HNRs requesting emergency treatment for his right eye but did not receive any additional treatment. Between June 5 and July 5, 2025, Plaintiff submitted seven requests that NaphCare approve the ophthalmologist-recommended procedure, but his requests were denied, on the

apparent basis that Plaintiff was receiving "effective eye treatment" and that his condition was being monitored.

Between July 10 and August 20, 2025, Plaintiff submitted eight HNRs requesting emergency treatment for his eye but did not receive any response. Plaintiff then submitted seven additional HNRs requesting approval of the ophthalmologist-recommended procedure. Plaintiff did not receive medical treatment for his right eye. Plaintiff "is denied access in walking into" the medical unit because NaphCare does not allow prisoners to "just walk into the medical unit for treatment."

On September 29, 2025, Plaintiff submitted an HNR requesting to review all his medical records. On October 12, 2025, NaphCare denied his request to review his medical records without explanation. Plaintiff submitted four emergency HNRs between November 4 and 20, 2025 requesting treatment for his right eye, but he did not receive a response. On November 20, 2025, Plaintiff submitted an emergency request to review his medical records, which NaphCare denied the next day.

On November 26, 2025, Plaintiff submitted an HNR stating that he was beginning to have "problems" in his left eye because he was being denied treatment for his right eye. On December 23, 2025, Plaintiff submitted an HNR "pleading for action[] [o]n his many HNRs concerning" his right eye. Plaintiff did not receive responses to his HNRs.

Plaintiff alleges that NaphCare did not approve his outside consultation with an ophthalmologist and denied treatment for his right eye "due to cost." Plaintiff claims that because of NaphCare "policy, customs and practices," his right eye was not treated or evaluated during the January 2025 appointment with the ophthalmologist.

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam). A plaintiff must allege the specific policy or custom and how it violated his

constitutional rights. A private entity is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights. *See Tsao*, 698 F.3d at 1139; *Buckner*, 116 F.3d at 452.

Liberally construed, Plaintiff has stated a claim against NaphCare. The Court will require NaphCare to answer the Complaint.

**III.    Plaintiff's Motion**

In his Motion, Plaintiff asks the Court to order NaphCare to immediately take him to an ophthalmologist for a full medical evaluation of the damage to his right eye.

Whether to grant or deny a motion for a temporary restraining order or preliminary injunction is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979).

**A.    Motion for Temporary Restraining Order**

A temporary restraining order can be issued without notice

> only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; **and** (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1) (emphasis added). *See also* LRCiv 65.1 ("*Ex parte* restraining orders shall only issue in accordance with Rule 65, Federal Rules of Civil Procedure.").

Plaintiff has not shown that he will suffer irreparable injury before Defendant can be heard in opposition and has not certified the "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Because the request for a temporary restraining order fails to comply with Rule 65(b)(1)(B), the Court, in its discretion, will deny Plaintiff's Motion to the extent that he requests a temporary restraining order. *See* LRCiv 65.1.

**B.    Motion for Preliminary Injunction**

To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

TERMPSREF

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

The Court will require Defendant to respond to the portion of the Motion that seeks a preliminary injunction.

## IV.    Warnings

### A.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B.    Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendant with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendant, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

. . . .

. . . .

TERMPSREF

- 7 -

**C.      Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)      The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant NaphCare.

(2)      Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(3)      If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(4)      The United States Marshal must retain the Summons and copies of the Complaint, Motion for Emergency Preliminary Injunctive Relief, and this Order for future use.

(5)      The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendant must include a copy of this Order.

(6)      If Defendant NaphCare who agrees to waive service of the Summons and Complaint, NaphCare must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

TERMPSREF

(7)    The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

      (a)    personally serve copies of the Summons, Complaint, Motion for Emergency Preliminary Injunctive Relief, and this Order upon Defendant pursuant to Rule 4(h)(1) of the Federal Rules of Civil Procedure; and

      (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, Motion for Emergency Preliminary Injunctive Relief, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(8)    Defendant NaphCare must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(9)    Plaintiff's Motion for Emergency Preliminary Injunctive Relief (Doc. 4) is **denied in part** to the extent that Plaintiff seeks a temporary restraining order. The Court **will not rule at this time** on Plaintiff's request for a preliminary injunction.

(10)    Within **21** days of being served with the Complaint and Motion for Emergency Preliminary Injunctive Relief, Defendant NaphCare **must respond** to the

portion of the Motion for Emergency Injunctive Relief that seeks a preliminary injunction.

(11)   Plaintiff may file a reply within **10 days** of Defendant's response.

(12)   This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 9th day of April, 2026.

James A. Teilborg
Senior United States District Judge

TERMPSREF