SKC

WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Johnny Ray Foster,
Plaintiff,

v.

NaphCare Incorporated,
Defendant.

No. CV-26-00251-PHX-JAT (DMF)

**ORDER**

Plaintiff Johnny Ray Foster, who is currently confined in the Arizona State Prison Complex (ASPC)-Lewis, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Plaintiff also filed a Motion for Emergency Preliminary Injunction [] and for Emergency Evaluation and Treatment of Plaintiff's Right Eye Injury (Doc. 4). Plaintiff sought an immediate ophthalmologist evaluation, and the Court denied the Motion, finding that Plaintiff failed to show a likelihood of success on the merits of his claims or that he faces a threat of irreparable harm absent preliminary injunctive relief. (*See* Doc. 24 at 10.)[1]

Before the Court is Plaintiff's "Motion: for Rehearing of the Court's Decision Denying Plaintiff's Motion for Preliminary Injunction [] and for Emergency Evaluation and Treatment of Plaintiff's Right Eye Injury (Doc. 4) and for an Evidentiary Hearing and Appointment of Counsel for Plaintiff" (Doc. 25), which the Court construes as a motion

---

[1] To be entitled to preliminary injunctive relief, a plaintiff must demonstrate that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

for reconsideration of its Order denying Plaintiff's Motion for Preliminary Injunction. The Court will deny the Motion for Reconsideration.

**I. Background**

On screening Plaintiff's Complaint under 28 U.S.C. § 1915A(a), the Court found that Plaintiff stated an Eighth Amendment medical care claim against Defendant NaphCare Incorporated—the contracted medical provider for the Arizona Department of Corrections, Rehabilitation and Reentry—based on Defendant's alleged failures to treat Plaintiff right eye pain and vision loss following an October 2024 right eye injury in order to reduce costs. (Doc. 8.)

**II. Reconsideration Standard**

The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396 (9th Cir. 1992). "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1).

Any motion for reconsideration must specifically identify the matters that were overlooked or misapprehended by the Court. *Id.* If any new matters are being brought to the Court's attention for the first time, the movant must identify the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order. *Id.* No motion for reconsideration of an Order may repeat any oral or written argument made in support of or in opposition to the motion that resulted in the Order. *Id.*

**III. Analysis**

In its Order denying Plaintiff's Motion for Preliminary Injunction, the Court set forth Plaintiff's allegations concerning his October 22, 2024 right eye injury and Defendant's alleged failures to timely send Plaintiff to an ophthalmologist or approve recommended treatment that allegedly could have restored Plaintiff's lost vision. (*See* Doc. 24 at 3−4.) The Court also set forth the relevant facts about Plaintiff's offsite ophthalmology visits as set forth in the declaration of NaphCare's Director of Optometry,

Dr. Tyrone Favis, O.D., and as supported by Plaintiff's medical records, which Defendant produced and Plaintiff did not materially dispute. (*See id.* at 5−8.)

Upon review of these facts, the Court concluded that Plaintiff was "not likely to prevail on the merits of his claim based on allegations that he did not receive timely medical care for his right eye injury due to NaphCare's refusal to authorize proper treatment to contain costs." (*Id.* at 8.) The Court found that "the evidence does not show, as Plaintiff contends, that any offsite medical provider refused to examine or provide treatment for Plaintiff's right eye because NaphCare refused to authorize such treatment based on cost containment." (*Id.*) The Court also found that Plaintiff failed to show a current risk of irreparable harm absent injunctive relief because the evidence showed Defendant repeatedly sent Plaintiff to offsite eye specialists and continued to do so. (*Id.* at 10.)

In his Motion for Reconsideration, Plaintiff argues that the Court failed to apply the correct legal standards, specifically the Prison Litigation Reform Act's (PLRA's) imposition of an additional requirement on prisoner litigants who seek preliminary injunctive relief against prison officials, requiring that "any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm." (Doc. 25 at 2−3.) Plaintiff argues that he met this requirement because he spelled out the narrow relief that was necessary to correct the alleged harm, which he claims was "to take Plaintiff immediately to see an Oculoplastic Specialist for immediate[] evaluation and treatment in this case." (*Id.* at 7.)

Plaintiff is correct to the extent that, in addition to having to meet each of the *Winter* factors required for obtaining preliminary injunctive relief, a prisoner seeking relief against prison officials is subject to the PLRA, which requires that the requested relief be "narrowly drawn and the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000). The Court did not err, however, in failing to apply this standard. Instead, the Court did not reach the question of whether the relief Plaintiff sought was narrowly drawn because it found that Plaintiff had not made the required *Winter* showings—specifically, likelihood

of success on the merits and irreparable harm—that would entitle him to relief in the first instance. *Winter*, 555 U.S. at 20. Absent these showings, the Court did not err by failing to address whether the relief Plaintiff sought was narrowly drawn.

Plaintiff also argues that "the Court was dec[ei]ved by the Defendant in their showing that [Plaintiff's] many [specialist] appointments [showed] Plaintiff was adequately being treated specifically for his right injured eye." (Doc. 25 at 3.) Plaintiff argues that "all those outside ophthalmologist[s] were 'only' evaluations not in any form of treatments to help Plaintiff's vision." (*Id.*) He goes on to argue that

> in the private medical discussion[s] between him and these many Ophthalmologist[s,] they all acknowledged that the[re] was nothing that any of them could do to save Plaintiff's vision, but they all recommended that there was a great chance that Plaintiff's vision in his right eye could be restored by an "Oculoplastic Specialist" who[] ha[s] the experience and equipment [to] restor[e] Plaintiff's vision, but the procedure is very intense. . . .
>
> [T]he Court err[ed] in failing to see in [Defendant's R]esponse any acknowledgement that an evaluation by an Oculoplastic Specialist is warrant[ed] or not in helping Plaintiff in restoring the vision in his right eye.

(*Id.* at 3–4.)

By this, Plaintiff appears to argue that, in support of his Motion, he presented evidence of private conversations he had with each of the ophthalmologists who examined him, and even though they said they could not do anything to restore the vision to his right eye, each of them said that an oculoplastic specialist could likely provide this treatment. Plaintiff also appears to argue that Defendant was aware that an oculoplastic specialist could provide the necessary treatment to restore Plaintiff's right eye vision, and they deliberately failed to provide this care, ostensibly to save costs. (*See id.*)

As he did in his Reply to his Motion for Preliminary Injunction, Plaintiff once again changes the nature of the relief he requested in his Motion and presents new facts and arguments he did not previously present to the Court. (*See* Doc. 24 at 8–10 (discussing

Plaintiff's new arguments in his Reply).) As discussed, Plaintiff's Motion was based on Defendant's purported refusals to authorize/pay for recommended treatments that several offsite ophthalmologists told Plaintiff they could provide that would restore Plaintiff's vision in his right eye. (*See* Doc. 4 at 3−6.) But when the medical record evidence Defendant produced in its Response did not support that any ophthalmologist recommended/sought to perform any vision-saving treatments that NaphCare refused to authorize, Plaintiff abandoned this argument. (*See* Doc. 24 at 8 (noting that Plaintiff made no attempt to address the discrepancies between his allegations in his Motion and the medical record evidence Defendant produced).) Instead, Plaintiff argued for the first time that his ophthalmology appointments were ineffective because Defendant denied him the "one treatment that was recommended by MD Sara Raafat Ghobraiel," which was "to schedule Plaintiff immediately to an 'oculoplastic doctor' due to Plaintiff suffering a fracture to his right eye." (Doc. 21 at 7.)[2]

Even though Plaintiff raised this argument for the first time in his Reply and therein also materially altered the relief he sought from a request for a full medical evaluation by an ophthalmologist to a referral to an oculoplastic specialist, the Court nonetheless addressed Plaintiff's contention that Defendant denied him this care. (*See* Doc. 24 at 10.) Still, the Court found no evidence that Defendant ever received or denied a recommended oculoplastic referral for Plaintiff. As discussed in the Court's prior Order, the medical record evidence confirms that, on April 30, 2025, Plaintiff saw Dr. Ghobraiel for complaints of "stabbing pain" in his right eye, and Dr. Ghobraiel discussed referring Plaintiff to an oculoplastic doctor for a possible right orbital fracture, but the evidence also shows Dr. Ghobraiel made clear that "any intervention now will not return vision," and

---

[2] Based on publicly available information online, "[o]culoplastic and orbital surgeons are ophthalmologists who completed additional fellowship training in the medical and surgical management of a wide range of conditions affecting the structures that surround the eye, including the eyelids, eye socket (orbit) and tear drainage system." https://www.mayoclinic.org/departments-centers/oculoplastic-and-orbital-surgery/overview/ovc-20524322 (https://perma.cc/8FFC-C2SP).

that the goal was "comfort care" for Plaintiff's right eye and to maintain vision in the left eye. (*Id.*; *see* Doc. 16-1 at 159.) The evidence also shows that Plaintiff declined any further care at that visit and instead requested a second opinion. (*See* Doc. 16-1 at 159.) Although his medical records show he saw other ophthalmologists both before and after this visit, Plaintiff did not direct the Court to any evidence that Dr. Ghobraiel or any other provider ever requested an oculoplastic referral and Defendant denied the request.

Plaintiff now argues that the Court erred by "not questioning why the Defendant did not send Plaintiff to an Oculoplastic for [at] least an evaluation of his right eye injury" and that this error was "an abuse of discretion." (Doc. 25 at 4−5.) Plaintiff does not, however, address the above evidence, which the Court discussed in its prior Order, showing he declined any immediate treatment when Dr. Ghobraiel discussed this potential referral and instead requested a second opinion. Plaintiff also does not identify any other evidence the Court purportedly overlooked showing Defendant was aware of his need to see an oculoplastic specialist and denied him this care.

To the extent Plaintiff now argues for the first time in his Motion for Reconsideration that, in addition to Dr. Ghobraiel, every ophthalmologist he saw told him that, although there was nothing they could do to save his vision, there was a "great chance" an oculoplastic specialist would have the requisite experience and equipment to do so, this assertion is squarely at odds with the only relevant medical record evidence before the Court on the issue, which shows that, while Dr. Ghobraiel did discuss referring Plaintiff to an oculoplastic specialist to address a possible orbital fracture, she clearly stated there was no treatment that would restore his vision. In any event, Plaintiff did not previously make this claim, either in his Motion for Preliminary Injunction or in his Reply to that Motion, and he does not provide any reason he was unable to do so earlier that would merit reconsideration of the Court's prior Order on these facts. *See* LRCiv 7.2(g)(1).

Finally, although the Court acknowledged in its prior Order that, with additional facts and evidence, Plaintiff may be able to show a past constitutional violation, the Court explained that to be entitled to preliminary injunctive relief, Plaintiff "must demonstrate a

present threat of irreparable injury, not a past injury." (Doc. 24 at 10.) *See Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"). The Court did not err in finding that, on the current record, Plaintiff failed to make this showing. Accordingly, the Court will deny Plaintiff's Motion for Reconsideration.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as Plaintiff's "Motion: for Rehearing of the Court's Decision Denying Plaintiff's Motion for Preliminary Injunction [] and for Emergency Evaluation and Treatment of Plaintiff's Right Eye Injury (Doc. 4) and for an Evidentiary Hearing and Appointment of Counsel for Plaintiff" (Doc. 25), which the Court construes as a Motion for Reconsideration, and the Motion is **denied**.

(2) All other matters **must remain** with the Magistrate Judge for disposition as appropriate.

Dated this 13th day of October, 2026.

James A. Teilborg
Senior United States District Judge